Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to this panel session. We were supposed to be in Atlanta this week, but things are getting better all over the country with the rate of infections from COVID and with the rate of vaccination. So we hope that at some point in the near future, we'll be back to business as usual. But obviously this one session will be by Zoom. So we thank you all very much for being here with us. Judge Brasher, Judge Anderson and I are thrilled to have you here and we're almost ready to get started. We obviously don't have the traditional lighting system because you're not with us in person, but at the top corner of the screen, you will see a clock and that clock will tell you how much time you have left. And Mr. Robinson, our courtroom deputy will let you know when you have two minutes left of your time. So you at least have an idea of when you should begin to wrap up. If we take you beyond your time, don't worry about it. You're on our time and not yours and just keep going until we're done with the questioning. With that, we are ready to begin. And our first case is number 19-14645, Dr. Saeed Haki versus the Secretary for the Department of Veterans Affairs. And Mr. Sperry, we'll start with you. Thank you, Your Honor. May it please the court. Dr. Haki was a VA physician before his discharge and thus a federal employee with a customizable property interest in that employment and entitled to the due process protection under the Fifth Amendment, which includes protection from arbitrary actions by administrative agencies that deprive a citizen from life, liberty, and in the instant case, property right. On December 7, 2009, Dr. Haki filed his grievance to the November 13, 2009 decision letter of Mr. Hedrick that sustained a July 8, 2009 proposed discharge. After almost nine years, Dr. Haki's grievance was heard before Dr. Mayo Smith as grievance examiner in June of 2017. After the two-day grievance hearing, the grievance examiner recommended that Dr. Haki's discharge be reversed and that Dr. Haki be reinstated. The basis for the recommendation was that Mr. Hedrick's November 13, 2009 discharge decision was arbitrary and nonconformity with VA regulations. The grievance examiner also found that Mr. Hedrick applied standards to support Dr. Haki's discharge that he did not to others in similar cases. What we find significant is that Mr. Young, the last reviewing administrative official, rejected the grievance examiner's recommendation based upon a year earlier, December 19, 2008, denial of a leave without pay request, rather than the discharge decision grieved. Mr. Young also made no reference to the grievance the VA regulations. It is clear that the grievance examiner found the discharge decision to be arbitrary, and it is also clear that Mr. Young's reliance on an earlier leave without pay decision was a pretext to summarily deny the grievance of Dr. Haki's discharge. Mr. Sperry, could I interrupt you for a minute? Yes, sir. Before you continue on with the merits of your client's claim, can you talk to us about whether or not the district court correctly ruled that Dr. Haki did not have a remedy under the APA, given the remedial scheme set forth for VA employees like Dr. Haki? I can. Obviously, the leading case is the Fausto case, and that is what's relied upon by the government. We believe that there is an exception which was found in Fausto to the general principle that if it's absence of writing, then there is judicial review of an agency available. That court, Fausto, found an exception to it. In this case, what happened was with the VAB, from past experiences, the VAB did not have a disciplinary appeals board when you're dismissed as a physician or other licensed medical provider for misconduct regarding with professional conduct. With that addition and that section, they came up with a scheme for not only a standard of, for the secretary to review and what that secretary must, the secretary must look at, meaning the final administrative person, but also came up with, obviously, judicial review. For those other Title 38 employees, they didn't mention anything. They left it as is. So, we would suggest that the presumption is they could have very easily said there is no judicial review. And if you look at the section, it refers back to the disciplinary board and deals with all employees. So, I believe that in this case, I don't know whether there is an exception, but notwithstanding, if there is APA review, you would have, it becomes an arbitrary and capricious standard. And if you'd have a Fifth Amendment review, which I believe is appropriate here, we have the same arbitrary and capricious review. So, whether or not the Fausto case applies or not for purposes of the APA, Dr. Hackey still has a viable Fifth Amendment case for his discharge. Well, let me ask you a question about that. So, it was my understanding, I mean, the due process clause only requires notice and a hearing, right? So, I mean, I don't know that we would get to the full kind of robust review that you're talking about under a due process theory. May I respond? Yeah, of course. Okay, thank you. So, that being said, this court in Hardison v. Cohen rejected the notion that a previous decision in Stevens v. Department of Health and Human Services foreclosed equitable relief in the face of a comprehensive remedial statutory scheme, which is what is argued by the government in this case. And therein, it cited this court's decision in Perry v. Thomas and acknowledged that federal courts have the power to issue injunctive relief in disputes between the United States and its employees, notwithstanding the existence of administrative remedies. The Hardison decision also cited the Third Circuit decision in Mitcham v. Hunt for the principle that it's been a long-established principle that federal courts have the power to grant equitable relief for constitutional violations. Yeah, I guess my question is, how is it a constitutional violation here? And I may be wrong about this. That's why I'm asking the question. I mean, I thought that the procedural due process right was to have notice and to have a hearing. And so, that would be what we were looking at. And there's no question that there was notice and a hearing here. So, what's the procedural due process right to more than that? Okay, so, in response to that, I will reference you to the Fifth Circuit decision in Gilbert v. Johnson. And in that decision, the court held, this is a 79 decision, that the due process clause of the Fifth Amendment affords judicial review of federal employee personnel decisions to determine if the employee was afforded administrative procedural due process by statute, regulations, and the arbitrary or capricious. Additionally, I will refer you to this court's decision in Marquez Martin v. United States AG. Therein, the court found an agency action is arbitrary and capricious when an agency relies on factors not intended to be considered. In this case, I would refer to, it was not intended that this year prior grievance, excuse me, leave without pay decision was not even part of this grievance. So, we do have a factor that was not intended to be considered. Counsel, this is Judge Anderson. I understand your argument is that relied upon the December 2008 denial of the extension. And you say that the proposed discharge did not involve that at all, but that's just plain wrong. The proposed discharge, my recollection was issued by Wright, was it not? Dr. Wright was the person. And he relied upon that very thing that the December 2008 extension was denied. And therefore, you had to report on January 2, 2009. And you were able thereafter, which are precisely the same reasons that Young relied on. Well, Your Honor, is that decision that was, that decision was appealed through union grievance procedures. And that was resolved. And then the question is, if you read through is whether or not Dr. Hackey was discharged for not depending on which person in the agency, whether it was for not appearing, reporting duty on July 1 or otherwise. However, if the grievance and if we read through the grievance was not as necessarily associated with that specific event, the history of this case and the grievance deals with what was the due process and the whether or not the decision that led to Mr. Hedrick or the decision of Mr. Hedrick was arbitrary and capricious. And there are a litany of VA regulations that were not complied with in that decision making. So it goes, it goes beyond just that one decision. So we believe that the actual finding that came from Mr. Hedrick to approve the discharge and the mechanisms that were involved in how he came to that conclusion were contrary to the VA regulations. And I have two problems with your reliance on Hedrick. And I understand he was the decider, the decision maker after the first grievance. The first problem I have with your reliance on that is that he did mention the July 1 date, which the proposed settlement in the arbitration suggested might be a settlement. You actually rejected that. But in any event, the July 1 date was inextricably intertwined with the earlier. In fact, Hedrick himself, although he talked about July 1, he also said that that was a pattern and that you had not appeared on January the 2nd, 2009, and you were AWOL thereafter. The second, so my first problem with your argument is that Hedrick, Hedrick's mention of July 1 is intertwined with the December 2008 denial and AWOL after January 2. My second problem is that Hedrick's decision is actually replaced. You, in effect, got a new trial and a new grievance, and Mayo Smith and Young handled the second grievance, and that replaced whatever Hedrick said anyway. How do you respond? Okay, so obviously, Mr. Hedrick is the, my time, just to let you know, is almost out. May I continue, please, Your Honor? Yes, please. Please finish answering Judge Anderson's question and take whatever time you need. Okay, so obviously, there's a multiple-step procedure here. We had the grievance, and we had the discharge, and then we had the grievance was filed to set forth certain matters. Obviously, we had a due process, already one due process issue with the first grievance, which was documented, and then we had the second grievance, and what the distinguishing factor, I believe, between Mr. Young and the grievance examiner, Dr. Mayo Smith, is that Dr. Mayo Smith found that the decision of the, Mr. Hedrick was arbitrary and not in accordance with VA regulations, so that's the first thing, and I believe what happened was, and why there was even a reference to this earlier leave without pay was that in lieu of just reversing the discharge, which would have reinstated Dr. Hackey, I guess, as of November 30th, the effective day of the discharge, is Dr. Mayo Smith saw the history of this case all the way back to 2008, how the VA handled it. For example, one of the, if you look at the history with Dr., with Mr. Hedrick, is if previously there were some other leave without pay requests, there were discharges, and they were all overturned, and those were used as a historical thing as to his being an habitual, being an AWOL, but that's not, you can't use those things, so he went through the whole history of how Dr. Hackey and the VA interacted and made a determination, not only, not only was it wrong, Mr. Hedrick's decision by doing the proposed discharge, he did not believe that was appropriate, but when coming to a remedy, what do I do with the remedy is, you know what, I think this goes as far back as December of 2008, so rather than reinstating Dr. Hackey as of November 30th because of the faulty decision of Dr. Hedrick, I think the actions of the VA go all the way back to December of 2008, and why did he do that is during the hearing and the testimony is Mr. Hedrick testified that he thought that and relied upon the episodes and the findings of the grievance, the leave without pay decision back in December 2008, which was not grieved, though the matters grieved were all things subsequent to there and involved the hearing itself and how the hearing was handled and whether it was appropriate with regarding VA regulations. It did not address and the grievance did not address that specifically without pay request that was denied because that already went through an appellate process. There was no reason that was done. What we were suggesting is that the decision, the ultimate decision by Mr. Hedrick was faulty based upon numerous outline factors that we set forth, none of which were reviewed. Well, I think Dr. Mayo Smith reviewed that because that was argued at the grievance hearing, and that's one of the reasons that I think he came up with the fact that the decision was arbitrary and didn't follow VA regulations. Judge Jordan, I think counsel has answered my question. Okay. All right. Thank you, Judge Anderson. Okay, Mr. Sperry, thank you so much. You've saved all of your time for rebuttal. Thank you, Your Honor. Mr. Scholl. Good morning, Your Honors. Counsel Peter Scholl on behalf of the secretary. The most significant point, Your Honors, is that the merits of the VA's decision to remove Dr. Hackey from his position are not an issue in this appeal. What really is an issue is whether or not the administrative grievance procedure established by the Veterans Benefits Act was Dr. Hackey's exclusive remedy to challenge that decision, and whether the VA afforded him procedural due process during his grievance proceeding. The district court correctly answered both of those questions, yes. Now, focusing first on the point that Judge Jordan raised, the exclusivity question, the VA appointed Dr. Hackey under 38 U.S.C. 7401 subsection 1. The grievance procedures that apply to VA employees appointed under that section are set forth in great detail in sections 7461 through 7464. In cases that involve major decisions, major adverse actions like the removal of an employee and questions of professional conduct or competence, section 7462 provides the matter will be decided by a disciplinary appeals board. Now, I believe if I understood Mr. Sperry correctly, he said that disciplinary appeals board proceedings apply to all employees. I don't think that's right. Under section 7463A2, which is part of 7463, which applied to Dr. Hackey's case, it says disciplinary appeal boards shall not have jurisdiction to review such matters other than as part of a mixed case. This was not a mixed case. None of the questions that led to Dr. Hackey's removal had anything to do with his professional conduct or competence. In any event, section 7462, which is one that applies to cases that involve disciplinary board proceedings, explicitly authorizes employees to obtain judicial review of final decisions of the disciplinary review board. But the VA didn't remove Dr. Hackey based on questions about his professional conduct or competence. So this case wasn't governed by 7462. It was governed instead by 7463. And under that section, the employee's grievance is decided by an impartial examiner, quote, within the Department of Veterans Affairs. That employee then... Mr. Shull, can I play devil's advocate for a minute with you? Mr. Shull, why can't you read 7463 as precluding a further administrative review by the disciplinary appeals panel, but still allow for judicial review under the APA? Well, I think for two reasons. The next step of administrative review under 7463 states that the employee then has the right to obtain review by a higher level agency official who can then accept, modify, or reject the examiner's recommendations. Now, the presence of an explicit grant of judicial review under the circumstances that did not apply to Dr. Hackey's case in 7462, coupled with a very explicit grant of administrative review that leaves out an under 7463, which is the applicable judicial... I'm sorry, administrative review procedure, that juxtaposition of judicial review in one section and not in another section really is what several of the courts get at in the cases that the secretary addressed in his brief, and that the district court relied on in the summary judgment order. I'm thinking primarily of Fausto, of Fligiel, and Payfax. All of those cases in combination suggest that in that kind of a situation where you have an overall comprehensive statutory scheme which sets forth the administrative and judicial review requirements for all employees, coupled with the fact that it only has the judicial review with respect to one of those provisions, I think that would address the question that your honor just posed. Right, but those two provisions are not the same, right? And you may have the better of the argument at the end of the day, but let me at least posit this for you. 7462 expressly refers to judicial review because there's another layer of administrative appeal with the disciplinary appeals board. And congress wanted to make sure that everybody knew that despite the additional layer of administrative review, you could still get to a district court under the APA. In 7463 cases, there is no other layer of administrative appellate review, and so why doesn't the I think first of all, I would disagree with your honor on the fact that on your honor's point that there's not two levels of administrative review within the contours of 7463. The first layer is in 7463d1, where the grievance examiner decides the grievance, and then that is then reviewed by the higher agency official. But isn't the decision by the grievance examiner just a recommendation? Yes, yes. So there is, so there is no layer of appellate review, administrative appellate review. It's just, it's like an R&R from a magistrate judge to a district judge. The first level, the first level examiner is not adjudicating anything in any sort of final sense. He or she is just making a recommendation to the ultimate decision maker. Why, why doesn't that render 7463 different than 7462? Well, I think they're different, but I don't think it's a difference that leads to the conclusion that the difference creates a right to judicial review under 7463 cases that wouldn't otherwise exist. And I think that one way to get at the court's concern with respect to what options or what additional avenues of review may or may not exist under the APA or the Mandamus Act is to look at the explicit language of the APA. The APA explicitly states that it does not apply to the extent that, quote, statutes preclude judicial review, or quote, agency action is committed to agency discretion by law. I think that the language of 7463 pretty clearly delegates the decision in cases like Dr. Hattie's, which involved a major adverse decision but did not involve professional competence, is pretty clearly delegated to agency discretion. There's no discretionary language in 7463, not in terms of APA divestment terms. I mean, in a sense, every decision that an agency makes is committed to its discretion. Abstractly, that has to be the case. The question is whether or not it is so committed to agency discretion that no review whatsoever is permitted. So take, for example, an immigration provision where the attorney general in his or her discretion can decide whether or not to waive a ground of removability for an alien. And those things are not judicially reviewable. But just because an agency has to make a decision doesn't mean that decision is committed to discretion, so as to divest review under the APA. And like I said, you may have the better of the argument at the end of the day, but there's no discretion-filled language in 7463, right? Well, the discretion, I think, is in the regulations. But what regulation is it? It's the regulation that deals with the leave without pay. Which, I'm asking you if you know, what's the citation to that regulation? Yes, I believe it's the, forgive me for getting out of the screen for a second. It's the VA handbook provision that the ultimate decision maker ultimately relied on, which is VA, it's in the record at, so it's not a codified regulation in the Code of Federal Regulations, it's a regulation or provision in the handbook? It's the VA handbook, and it's chapter three of the VA handbook, 5011, and that talks about the authorization of leave without pay as a matter of administrative discretion. Now, granted, I mean, that's the handbook, but I think I would come back to in about leave without pay, not the discretion about termination, right? Well, I think that they all, in this particular case, they all become, as Judge Anderson was saying earlier, it's all inextricably intertwined with one another. When you're talking about a failure to report to work on a particular date, whether you're looking at the July 1st, 2009 date or the January 2nd, 2009 date, the fact that those are significant dates and the fact that Dr. Hockey was AWOL after not having reported on those dates is only established by looking at the fact that the leave without pay request to extend his leave without pay to cover those periods was not granted, it was denied. So I think it's all inextricably intertwined. But the termination decision is a step beyond the determination that someone was AWOL. If not, you wouldn't have had to undergo a second decision about termination. I mean, AWOL status does not automatically lead to termination. Somebody has to decide that your AWOL status merits a termination, right? Oh, of course. And that was the, ultimately, the basis for the agency's decision. I mean, they ultimately decided to terminate Dr. Hockey because the situation in Iraq, which was motivating his request for leave without pay, was an inherently uncertain and open-ended situation. The State Department or the Defense Department, whichever other government agency had initially requested him to go to Iraq, had informed the agency, the VA, that his duties had come to an end in Iraq. And at that point, the VA became obligated and certainly entitled to start considering the interests of the VA and the interests of patients and staff. And that's what it did. So I think that ultimately, from a procedural perspective, you can't look at one without also considering the other in terms of the denial. This is Judge Anderson with a question. Judge Jordan suggests that the express provision in 7463 that the DAB review will not apply in the future. I guess that that annuals to the benefit of the plaintiff's interpretation. But the Sixth Circuit took exactly the opposite view. It relied even more on that express provision precluding DAB review than the fact that 7462 expressly provided judicial review and 7463 did not. Have any cases endorsed the view that Judge Jordan is taking? I'm not aware of any. And I think that the cases upon which the District Court primarily relied and upon which the Secretary primarily relies are not only the Sixth Circuit case, I believe Your Honor is referring to the Flavio case, but also the Fausto case and the Payback case and the Weber decision. All of those cases, I think, analyze not only the Veterans Benefits Act provisions and similar provisions, but also the APA, or not all of them, but several of them. I think the circuit cases do. And I think under the that the District Court reached, which is the Veterans Benefits Act is the exclusive remedy on any marriage-based decisions. And any additional review beyond that to consider the due process implications of the procedures that were employed, as this court recognized in Hardison, is an entirely separate question. Can I ask you a question about the statutory scheme here? So I just want your view on the sort of the purpose of the way these two statutes work together. I mean, it looks to me like 7462 provides sort of greater protections to employees and gives them more opportunity for review because there are questions of professional conduct at issue. I mean, is it fair to say that that's sort of the split that 7462, you get greater initial review? I thought about that, Your Honor. And I would agree with Your Honor. I think that's one of the main distinctions when you track through the various circumstances that trigger the application of the two different types of procedures that are set forth in 7462 and 7463. And it varies based on the nature of the conduct. That's a question. And I would agree with Your Honor on that. So at the end of the day, many of Dr. Hackey's purported due process arguments are really challenges to the merits of the VA decision to remove them. That would apply to several different things. It's important that... This is Judge Anderson. Let me ask you this that he's talking about arbitrary and capricious matters. He states a due process claim, namely, that Young relied on reasons that did not appear in the proposed discharge. And I think that's just plain wrong on the facts. Am I right? Or is he right? Well, I think, again, I would agree with Your Honor. I don't think that's right on the facts. And one of the reasons it's not right on the facts is that each layer of decision-making, as you went through the administrative procedures, not only in the first round, but in the post-remand round, each one builds upon the other. And the decision-makers didn't necessarily always start from square one and revisit every single decision along the way. They focused on the decisions that they needed to focus on that were before them. Well, and the due process issue is whether the plaintiff had notice so that he could have an opportunity to be heard. And it seems to me that he had notice from the get-go when Hopkins denied the December 2008 extension. He cited the failure to report on January the 1st, January 2nd, 2009, and his being AWOL ever since. So that's been known to the plaintiff from the very get-go, has it not? This case has been litigated, and I say litigated not only on the judicial side, but on the administrative side, with that being the critical factor. He's known all along that the decision that the VA was making related not only to leave without pay, but the natural consequence of his failure to show up and report for duty at the end of the leave-without-pay period. You can't separate the two. And at any given point in time, you'd be talking about one or the other. But at the end of the day, you can't talk about either one of them, or you can't talk about the ultimate decision to remove for having not shown up for work without also talking about the leave-without-pay requests that were granted along the way and then ultimately did not extend beyond a certain date, which established the starting date for his AWOL status. So I agree with you, Your Honor. This is what the entire case is about. And if you look at the documents that were filed not only by the agency, but the various grievances and materials that were submitted by Dr. Hackey along the way, that's what this entire case has been about. So there's no question that every step of the way that we're talking about, everything that authorized date of leave-without-pay. So I see my time has expired. And if the court has no further questions, I'll submit on the briefs and my comments here this morning. Thank you, Mr. Scholl. Thank you. Okay, Mr. Sperry, you've got your three minutes of rebuttal. Okay, thank you, Your Honor. First of all, I wanted the leave-without-pay issue is that went through a union process, there is a determination that well before the discharge, or even the proposed discharge, that that appeal process was exhausted, that was done, that was over with. What we have is, is that we have a discharge, a proposed discharge. And one of the things that we argued is whether or not even the remedy was appropriate. Additionally, as we've heard the argument from counsel is they continue to say that these decisions were based upon a certainty return, which is not the accurate standard. And even the proposed discharge, which is inappropriate, refers back to other AWOL determinations that were grieved and overturned and changed to leave without pay. So we have a ultimate decision of discharge that is being relied upon, in part because of factors that were grieved and overturned to amplify the penalty. And there is no certainty to return. And notwithstanding that, is every leave without pay request has a date to So, and then regarding, if I may, briefly regarding sections, if you look at section 7463, it starts talking about not all, it's all of these employees, and then it sections out if there is a, for professional misconduct and confidence, and then it goes into this other panel, which has a specific dictation. In this case, as your honor pointed out, is the ultimate decision is by Mr. Young, there's no doubt about it. And there is, we're done. I mean, he can do whatever he wants is, is what we're saying is, is that absent if he's right, wrong, whatever, that's it, you have no review whatsoever as to whether that decision was arbitrary and capricious, whether or not there were due process violations, and quite frankly, is relying upon a leave without pay, which is their entire argument, that was not grieved, the discharge was grieved. If you read through the grievance, it was the, it was the penalty we thought was excessive. And the mechanism involved was inappropriate. Coming to the conclusions, they violated left and right VA regulations, come Mr. Hedrick, and the, and the, and his final decision. And that's what is being grieved. We never grieved the leave without pay. That was grieved in an entirely different procedure that's done and over with. And we believe that, that because of the, you need not file, follow the Sixth Circuit. And notwithstanding, there is a Fifth Amendment argument, you know, I'm sorry, my time is up. If I can just finish this one thought. Sure. Okay. Is that less, we should not forget this is, he still has Fifth Amendment rights to due the discharge would be upheld or not because of this leave without pay. That was never part of the grievance. And we believe that is appropriate. There's cases out of this circuit regarding the ability for substantive due process rights to be held. And I think that whether we, they cited, whether it's Mitch and V. Hurd, a Third Circuit case or center be Gomez judicial review of an federal employee has the right to seek equitable declaratory relief. That is the law. Now that's been the law longstanding. And even if the court were to find. Okay. Mr. Perry, we've, we've let you go on for a little while. So, and I appreciate that. And I close and thank you very much, your honor and panel for allowing, entertaining this argument. Okay. Mr. Sperry, thank you very much, Mr. Scholl. Thank you very much as well. We appreciate it.